**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| DUSTIN LITTLE, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | FILE NO. |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| EAGLE RAILCAR SERVICES | ) | |
| - GORDON, GEORGIA, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff Dustin Little ("Mr. Little" or "Plaintiff") brings this Complaint against Defendant Eagle Railcar Services – Gordon, Georgia, LLC ("Eagle") and sets forth the following claims:

## INTRODUCTION

1.     Mr. Dustin Little is an experienced professional painter and blaster. He began working at Rescar Companies, Inc. ("Rescar") as a painter in December 2016. During his nearly 3-year career with Rescar, he excelled at his job.

2.     In August 2019, Eagle acquired the assets and personnel of Rescar and became Mr. Little's employer and a "successor in interest" to Rescar.

3.     During his employment with both companies, Mr. Little suffered from ulcerative colitis, which constitutes a disability as defined by the Americans with

1

Disabilities Act, as amended by the ADA Amendments Act of 2008 ("ADAAA"), 42 U.S.C. § 12101 *et seq*., and a serious health condition under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*

4.      After Eagle acquired the Rescar location where Mr. Little was employed and became his employer, Mr. Little's disability flared up and he requested FMLA leave and reasonable accommodations for his disability. Eagle denied Mr. Little's requests and instead retaliated against him, ultimately terminating Mr. Little while he was seeking and receiving treatment related to his disability.

5.      Accordingly, Mr. Little asserts claims against Eagle for discrimination, failure to accommodate, and retaliation under the ADAAA; and interference and retaliation under the FMLA.

6.      Mr. Little seeks injunctive and declaratory relief, back pay and lost benefits, front pay or reinstatement, compensatory damages, liquidated damages, and attorneys' fees and costs of litigation.

## **JURISDICTION AND VENUE**

7.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights).

8.      Venue is proper in this Court because this action may be brought in

2

any judicial district in the State in which the unlawful employment practice is alleged to have been committed. *See* 42 U.S.C. § 12117; 42 U.S.C. § 2000e–5(f)(3).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

9.    Mr. Little satisfied all administrative prerequisites to perfect his claims under the ADAAA. Specifically, Mr. Little timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), and the EEOC issued a notice of right to sue.

10.    Mr. Little brings this suit within ninety (90) days of receipt of his notice of right to sue.

## THE PARTIES

11.    Mr. Little is now, and was at all times relevant to this action, a resident of the State of Georgia.

12.    Mr. Little, at all relevant times to this action, was an individual with a disability within the meaning of the ADAAA, 42 U.S.C. § 12102(1).

13.    Mr. Little was a person with a disability because he had an actual physical impairment, ulcerative colitis, which substantially limited one or more of his major life activities, because he had a record of impairment, and because he was regarded as having an impairment.

14.    Eagle entered into a definitive purchase agreement to acquire the assets

and personnel of Rescar's Plant Services Division, including its Gordon, Georgia location, on or around July 3, 2019. The acquisition closed the first week in August 2019.

15.     When Eagle acquired Rescar, Eagle became Mr. Little's employer.

16.     Mr. Little is an "eligible employee" within the meaning of the FMLA because Eagle is a "successor in interest" to Rescar. 29 C.F.R. § 825.107.

17.     When Eagle acquired Rescar, Mr. Little was employed with Rescar for more than twelve months and worked more than 1,250 hours per year. And, "[w]hen an employer is a successor in interest, the employees' entitlements are the same as if the employment by the predecessor and successor were continuous employment by a single employer." *Id*.

18.     Defendant Eagle is a corporation that regularly transacts business in the State of Georgia.

19.     Defendant Eagle is a covered employer under the ADAAA, as it employs more than fifteen people.

20.     Defendant Eagle is also a covered employer under the FMLA, as it had more than fifty employees within a seventy-five mile radius in each of twenty or more consecutive calendar weeks in the current or preceding year within the meaning of the FMLA, 29 U.S.C. § 2601 *et seq*.

21.     Defendant Eagle may be served with a summons and copy of the Complaint in this action by delivering process to its registered agent: Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, GA 30092.

## STATEMENT OF FACTS

### *Mr. Little's Employment and Disability*

22.     Mr. Little began working for Rescar as a painter and blaster in December 2016.

23.     During his nearly 3-year tenure with Rescar, he excelled at his job and received good performance reviews.

24.     Prior to the events leading to his unlawful discipline and termination, Mr. Little never received any disciplinary action from Rescar or Eagle.

25.     Since 2019, Mr. Little has suffered from ulcerative colitis.

26.     Ulcerative colitis is a disability like Crohn's disease that affects the colon.

27.     Mr. Little's symptoms have been common for ulcerative colitis, including his need to move his bowels approximately 15 times per day and having blood mucus in his stool.

28.     Mr. Little has taken medication for his ulcerative colitis, and he has sought various treatments for the same, including steroid infusions, injections, and

sulfasalazine.

29.     Mr. Little can go short periods without symptoms, but then will experience flare ups that can last approximately one month. Each time his symptoms flare up, and depending on the severity of the flare up, Mr. Little seeks treatment for his disability from a doctor or at a hospital.

30.     Despite being diagnosed with ulcerative colitis, at all relevant times, Mr. Little was able to perform his essential job functions.

31.     Throughout his employment with Rescar and Eagle, Mr. Little requested frequent bathroom breaks when he had a flare up as a reasonable accommodation for the symptoms of his disability, and he specifically made this request dozens of times to his supervisors, including to his Head Supervisor and Paint Superintendent, Sean Feagin, in August 2019.

32.     When Mr. Little experienced flare-ups of his condition while working at Rescar and Eagle, he requested medical leave under the FMLA and as a reasonable accommodation, including in the summer of 2018 and the summer of 2019.

33.     Whenever Mr. Little requested medical leave, he provided Rescar and Eagle with everything that his employer required to maintain his employment, which was his only source of health insurance that allowed him to remain on his essential medications and treatments.

### *Mr. Little is disciplined after returning from*
### *absences protected under the FMLA and ADAAA*

34.    In mid-2018, Rescar granted Mr. Little's request for intermittent medical leave as a reasonable accommodation and FMLA leave.

35.    Approximately three weeks later, Mr. Little's supervisor, Sean Feagin, threatened to fire Mr. Little because he sought medical leave.

36.    Mr. Little repeatedly explained to Mr. Feagin, in graphic detail, the severity of his symptoms.

37.    However, Mr. Feagin showed little more than disdain for Mr. Little's disability.

38.    In January or February of 2019, Mr. Feagin disciplined Mr. Little for absences for his medical leave.

39.    When Mr. Little approached Mr. Feagin about these write-ups, Mr. Feagin repeatedly told Mr. Little, "you might want to find another profession."

40.    Mr. Little complained about Mr. Feagin's discriminatory actions to Rescar's corporate office in Illinois and was told that the company would look into it, but nothing ever came of it.

### *Eagle Acquires Rescar and Becomes a*
### *"Successor in Interest" and Mr. Little's Employer*

41.     On July 3, 2019, Eagle announced in a press release that it had "entered into a definitive purchase agreement to acquire the assets and personnel of Rescar Companies' Plant Services Division, and that it expected the deal to close the first week of August 2019."

42.     The press release also stated that Eagle's purchase "adds five full-service railcar repair and maintenance facilities to Eagle's current network."

43.     When announcing Eagle's acquisition of Rescar shops and personnel, Eagle's President, Marc Walraven, stated, "we have a lot of work in front of us to fully integrate the Rescar facilities and 400 new employees into the Eagle system." Mr. Walraven also stated, "Adding the Rescar shops to our portfolio will broaden our geographic reach and will double our network capacity[.]"

44.     In a statement published on the website of Livingstone Partners LLC, the attorneys who represented Rescar on the acquisition, Rescar President & CEO Joseph Schieszler Jr. described Eagle's acquisition of Rescar's facilities and employees by stating, "We've been in business a long time and wanted to ensure continuity for long-time customers and employees."

45.     When Eagle acquired Rescar's assets and personnel, Eagle used the same facility where Mr. Little worked when working for Rescar, which is located at

109 Ballpark Road, Gordon, GA 31031 (the "Gordon facility").

46.     When Eagle acquired Rescar's assets and personnel, Eagle continued to use the same jobs and workforce that worked at Rescar's Gordon facility, as evidenced by the continued employment (with the same titles) of Mr. Little (until his termination), numerous co-workers of Mr. Little in the paint shop, Jennifer Smith in HR, the Plant Manager Lee Aughenbaugh, Mr. Little's managers, Sean Feagin, Roger Seckinger, and Steven [LNU], among other employees.

47.     When Eagle acquired Rescar's assets and personnel, Eagle used similar or the same supervisory personnel with respect to Mr. Little, as evidenced by the fact that the Plant Manager at the Gordon facility and Mr. Little's supervisors in the paint shop where he worked remained the same individuals at all relevant times.

48.     When Eagle acquired Rescar's assets and personnel, the Gordon facility continued to operate as a railcar repair and maintenance facility with substantial continuity of the same business operations, as evidenced by Eagle's press release stating that it was "adding shops to its portfolio" and "adding five full-service railcar repair and maintenance facilities to Eagle's network." Eagle's substantial continuity of Rescar's business operations at the Gordon facility is further evidenced by the fact that Rescar's CEO stated that Eagle's acquisition should "ensure continuity for long-time customers and employees."

49.     When Eagle acquired Rescar's assets and personnel, because the Gordon facility continued to operate as a full-service railcar repair and maintenance facility, the products, services, machinery, equipment, production methods, and working conditions at the Gordon facility were similar to or the same as they were before Eagle's acquisition.

50.     Beginning on August 22, 2019, Mr. Little's paychecks came from Eagle since it was Mr. Little's employer.

### *Eagle terminates Mr. Little while he is on protected medical leave*

51.     Mr. Little's disability flared up again in late July and early August 2019, and he requested FMLA medical leave and an accommodation in the form of leave for a definite duration of time for the dates of August 12-16, 2019.

52.     Prior to Mr. Little taking this medical leave, Eagle was transitioning to take over Rescar.

53.     Mr. Little was aware of this transition and had been told that he and other employees would keep all their tenure as employees with Rescar in its transition to Eagle.

54.     Before he requested this medical leave, Mr. Little made his supervisor, Mr. Feagin, aware of his condition and its returning symptoms and told him he was going to request protected medical leave when needed.

55.     In response, Mr. Feagin stated that he would help Mr. Little.

56.     On August 9, 2019, Mr. Little told Eagle's Human Resources manager, Jennifer Smith, that he was taking medical leave to seek treatment with his gastrointestinal doctors, and he requested FMLA paperwork so that he could take medical leave.

57.     During this conversation, Mr. Little asked Ms. Smith if he was still covered under the FMLA.

58.     Ms. Smith said that she was not sure if Mr. Little was still covered under FMLA.

59.     After this conversation, Ms. Smith never got back to Mr. Little and took no further action with respect to Mr. Little's request for medical leave.

60.     Ms. Smith admitted that despite her responsibilities as Eagle's HR manager, she failed to do any follow-up regarding Mr. Little's request for FMLA leave, and that she "never spoke to [Mr. Little] again after that."

61.     Ultimately, Mr. Feagin and Ms. Smith disregarded Mr. Little's August 12-16, 2019, request for medical leave, and Eagle failed to engage in an interactive process with Mr. Little with respect to this request.

62.     On August 26, 2019, Mr. Little was admitted to the hospital for treatment of his disability.

63.     Due to his hospitalization and severe flare up, between August 26, 2019 and September 9, 2019, Mr. Little repeatedly went to the emergency room, his GI doctor, and urgent care to receive treatment, including but not limited to, steroid injections for his disability.

64.     During this time period, there were three individuals who supervised Mr. Little in the paint department: Mr. Feagin, Mr. Seckinger, and Steven [LNU].

65.     While Mr. Little was in the hospital and repeatedly visiting doctors' offices to seek and receive treatment for his condition, Mr. Little called all three of his supervisors concerning his medical absences, Ms. Smith, and Plant Manager Lee Aughenbaugh.

66.      For example, to report his condition and need for additional medical leave, Mr. Little called Mr. Seckinger on August 26, 2019 at 4:53am, Mr. Feagin on August 26, 2019 at 3:17pm, Mr. Feagin on August 29, 2019 at 7:38am, Ms. Smith and Mr. Aughenbaugh (on a shared line) on August 29, 2019 at 7:44am and 8:23am, Mr. Feagin on August 29, 2019 at 1:55pm, Steven on August 30, 2019 at 7:22am, Mr. Seckinger on September 3, 2019 at 5:41am, Mr. Feagin on September 3, 2019 at 6:54am, Steven on September 3, 2019 at 8:57am, and Steven on September 6, 2019 at 12:27pm.

67.     The great majority of the time the individuals Mr. Little attempted to

contact did not answer, and Mr. Little was forced to leave voicemails where he detailed the status of his treatments and the time he needed to recover from his condition.

68.     On September 9, 2019, Mr. Little spoke to his supervisor Steven (LNU) and requested another accommodation in the form of additional leave for a short period of time so that he could obtain further treatment for his disability. In this conversation, Mr. Little informed Steven of his current health situation and told him he would bring doctor's notes as soon as possible.

69.     Steven, however, informed Mr. Little that Mr. Feagin had already filed his termination paperwork and that Mr. Little was being terminated.

70.     When Mr. Little asked Steven why no one answered or returned most of his calls and asked about the status of his requested FMLA medical leave, Steven shared that Mr. Little's FMLA leave request was denied because he had not yet worked for Eagle for 12 months.

71.     Mr. Little explained that his tenure with Rescar was supposed to carry over for purposes of FMLA, but Steven apologized and repeated that the termination paperwork was already completed.

72.     Eagle terminated Mr. Little when it knew that he was still in and out of the hospital and incapacitated.

73.     At the time of his termination, Eagle knew that Mr. Little would need further FMLA leave in the future related to his serious medical condition.

74.     Ms. Smith and Mr. Feagin did not have any discussion regarding whether Mr. Little was entitled to an extension of his FMLA leave and/or additional medical leave as a reasonable accommodation for his disability and did not engage in an interactive dialogue with Mr. Little regarding any of his August-September 2019 accommodation requests prior to terminating his employment.

## COUNT ONE
## DISCRIMINATION AND FAILURE TO ACCOMMODATE IN VIOLATION OF THE ADAAA – ACTUAL DISABILITY

75.     Mr. Little incorporates by reference paragraphs 1 through 74 of this Complaint.

76.     Mr. Little is a qualified individual with a disability. Mr. Little's disability substantially limited one or more major life activities.

77.     Nonetheless, Mr. Little was able to perform the essential functions of his job.

78.     Mr. Little requested reasonable accommodations from Eagle relating to his disability, including but not limited to, requesting intermittent leave when he suffered pain or other symptoms from a flare up of his ulcerative colitis, requesting to take frequent bathroom breaks, and requesting time off in August-September

2019, due to hospitalization and treatments for severe complications from his disability.

79.     Eagle intentionally discriminated against Mr. Little by subjecting him to adverse employment actions including, but not limited to, denying his requested accommodations and unlawfully terminating his employment following his hospitalization due to severe complications due to his disability.

80.     Eagle's termination of Mr. Little were intentional and willful violations of the ADAAA in violation of Mr. Little's rights thereunder.

81.     Mr. Little is entitled to an award back pay, front pay, compensatory damages, attorneys' fees and costs, and other relief available under the ADAAA and all federal statutes providing remedies for violations of the ADAAA.

## COUNT TWO
## DISCRIMINATION IN VIOLATION OF THE ADAAA – REGARDED AS DISABLED

82.     Mr. Little incorporates by reference paragraphs 1 through 74 of this Complaint.

83.     Eagle terminated Mr. Little because it regarded him as being disabled.

84.     Eagle's termination of Mr. Little was an intentional and willful violation of the ADAAA in violation of Mr. Little's rights thereunder.

85.     Mr. Little is entitled to an award of back pay, front pay, compensatory

damages, attorneys' fees and costs, and other relief available under the ADAAA and all federal statutes providing remedies for violations of the ADAAA.

## COUNT THREE
## RETALIATION IN VIOLATION OF THE ADAAA

86.     Mr. Little incorporates by reference paragraphs 1 through 74 of this Complaint.

87.     Mr. Little is a qualified individual with a disability. Mr. Little's disability substantially limited one or more major life activities.

88.     Mr. Little was able to perform the essential functions of his job with Eagle.

89.     Mr. Little requested reasonable accommodations from Eagle relating to his disability, including but not limited to, requesting intermittent leave when he suffered pain or other symptoms from a flare up of his ulcerative colitis, and requesting leave in August and September 2019 due to hospitalization and treatments for severe complications due to his disability.

90.     Mr. Little's requests for reasonable accommodations constituted protected conduct under the ADAAA.

91.     Eagle terminated Mr. Little on September 9, 2019 in retaliation for his protected conduct of requesting reasonable accommodations under the ADAAA.

92.     Eagle's termination of Mr. Little was an intentional and willful

violation of the ADAAA in violation of Mr. Little's rights thereunder.

93.     Mr. Little is entitled to an award of back pay, front pay, compensatory damages, attorneys' fees and costs, and other relief available under the ADAAA and all federal statutes providing remedies for violations of the ADAAA.

## COUNT FOUR
## INTERFERENCE IN VIOLATION OF THE FMLA

94.     Mr. Little incorporates by reference paragraphs 1 through 74 of this Complaint.

95.     Mr. Little was an eligible employee with a serious health condition as that term is defined by the FMLA and accompanying regulations, specifically 29 U.S.C. § 2611(11) and 29 C.F.R. § 825.113.

96.     When Eagle terminated Mr. Little on September 9, 2019, Eagle was aware that he would need to take FMLA leave in the future.

97.     Eagle terminated Mr. Little before he could utilize additional FMLA leave.

98.     Eagle's actions in interfering with Mr. Little's FMLA leave were committed with reckless disregard for his right to take up to twelve work weeks of leave time for a serious health condition and in violation of the FMLA, 29 U.S.C. § 2615(a)(1).

99.     The effect of Eagle's FMLA interference has been to deprive Mr. Little

of a job, as well as income in the form of wages, and other economic benefits of employment due to him, solely because of his right to leave under the FMLA.

100.    Mr. Little is entitled to both equitable and monetary relief for Eagle's violation of the FMLA, specifically 29 U.S.C. § 2617(a)(1)(A) and (B), including back pay, front pay or reinstatement, attorney's fees and costs of litigation.

101.    Mr. Little is also entitled to liquidated damages for Eagle's willful violation of his rights under the FMLA, 29 U.S.C. § 2617(a)(1)(A)(iii).

**COUNT FIVE**
**<u>RETALIATION IN VIOLATION OF THE FMLA</u>**

102.    Mr. Little incorporates by reference paragraphs 1 through 74 of this Complaint.

103.    Mr. Little was an eligible employee with a serious health condition as that term is defined by the FMLA and the accompanying regulations, specifically 29 U.S.C. § 2611(11) and 29 C.F.R. § 825.113.

104.    Eagle intentionally retaliated against Mr. Little by disciplining him and by terminating him because of his exercise of FMLA rights and anticipated use of protected leave, and doing so shortly after he utilized FMLA leave and/or after he requested FMLA leave.

105.    Eagle's retaliatory conduct was committed with reckless disregard for Mr. Little's right to be free from discriminatory treatment for exercising his rights

under the FMLA, specifically 29 U.S.C. § 2615(a)(1)(2).

106.    The effect of Eagle's actions has been to deprive Mr. Little of a job, as well as income in the form of wages, and other economic benefits of employment due him, solely because of the exercise of his rights under the FMLA.

107.    As a result, Mr. Little is entitled to both equitable and monetary relief for Eagle's violation of the FMLA, specifically 29 U.S.C. § 2617(a)(1)(A) and (B), including back pay, front pay or reinstatement, attorneys' fees, and costs of litigation.

108.    Mr. Little is also entitled to liquidated damages for Eagle's willful violation of his rights under the FMLA, 29 U.S.C. § 2617(a)(1)(A)(iii).

## **PRAYER FOR RELIEF**

WHEREFORE, Mr. Little demands a **TRIAL BY JURY** and that the following relief be granted:

A.    That this Court take jurisdiction of this matter;

B.    That process be served on Defendant;

C.    That Mr. Little be awarded a declaratory judgment that Defendant violated the ADAAA and the FMLA;

D.    That this Court enter a permanent injunction, prohibiting Defendant from engaging in unlawful employment practices in violation of the ADAAA and

the FMLA;

     E.     That the Court award Mr. Little back pay and all benefits, privileges, and rights previously denied;

     F.     That the Court order that Mr. Little be reinstated or, in the alternative, be awarded front pay;

     G.     That the Court award Mr. Little liquidated and compensatory damages in an amount to be determined by the trier of fact;

     H.     That the Court award Mr. Little his costs in this action and reasonable attorneys' fees;

     I.     That the Court grant to Mr. Little the right to have a trial by jury on all issues triable to a jury; and

     J.     That the Court grant such additional relief as the Court deems proper and just.

     Respectfully submitted this 24th day of August, 2021.

              **BUCKLEY BEAL LLP**

              */s/ Rachel Berlin Benjamin*
              Rachel Berlin Benjamin
              Georgia Bar No. 707419
              rberlin@buckleybeal.com
              Andrew R. Tate
              Georgia Bar No. 518068
              atate@buckleybeal.com

600 Peachtree Street, NE, Ste. 3900
Atlanta, GA  30308
Telephone: (404) 781-1100
Facsimile: (404) 781-1101

*Counsel for Plaintiff*